UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROGELIO C. ESPINOZA,

    Plaintiff,

v.

M. LOMELI,

    Defendant.

Case No. 16-cv-06197-YGR (PR)

**ORDER ADOPTING MAGISTRATE JUDGE'S PREVIOUS RULINGS; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.  BACKGROUND

This suit was reassigned from Magistrate Judge Howard R. Lloyd to the undersigned judge in light of a recent Ninth Circuit decision.[1]

Plaintiff Rogelio C. Espinoza, a state prisoner currently incarcerated at the Richard J. Donovan Correctional Facility, brings the instant *pro se* action pursuant to 42 U.S.C. § 1983 against prison officials at the Correctional Training Facility ("CTF"), where he was previously incarcerated.

Magistrate Judge Lloyd previously dismissed the complaint with leave to amend. Dkt. 6. Thereafter, Plaintiff filed an amended complaint, which is the operative complaint in this action. Dkt. 7.

The following background is taken from the Court's May 16, 2017 Order of Partial Dismissal and Service Order:

> According to the allegations in the declaration attached to the amended complaint, Plaintiff claims that Defendants Ortega and Lomeli, employees at CTF, failed to provide him with a meaningful "Olsen Review" of his complete C-file, which was missing key documents such as his rap sheet. (Espinoza Decl. at 1-6.) After Plaintiff filed a 602 appeal on the matter, Plaintiff claims Defendant Lomeli compelled him "to sign [a withdrawal of the appeal] under duress on 04/17/14 causing a chilling effect." (*Id.* at 6-7.) Specifically, Plaintiff claims that he signed "on the wrong place on purpose" on the initial appeal filed on "3-06-14 Log No. CTF S-14-

---

[1] *Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017) (magistrate judge lacked jurisdiction to dismiss case on initial screening because unserved defendants had not consented to proceed before magistrate judge).

00504" because he did not really want to withdraw the appeal. (*Id.* at 7.) At the same time, Plaintiff claims that Defendant Lomeli "breached the contract" they made on 4-17-14, by failing to provide Plaintiff with everything he requested in the appeal. (*Id.*) Plaintiff claims that he later filed an inmate request for an interview (F-22) "requesting Lomeli to provide specific performance of the contract, to what he had agreed to provide during the time I was compelled to sign under duress on 4-17-14," and that Defendant Lomeli never responded to the request. (*Id.* at 8.) Then on 11-23-14, Plaintiff prepared legal mail, enclosing a 602 appeal form to "reinstate[] and redress the issues, and/or grounds pertaining to the first initial appeal." (*Id.* at 9.) The mail was addressed to Defendant [Appeals Coordinator] J. Truett, and returned with a notation by Defendant Secretary Rodriguez "refusing legal mail for recipient J. Truett" because the appeals office does not accept legal mail. (*Id.* at 10, 11.) Plaintiff speculates that the mail was "illegally returned" by Defendant Truett because he noticed it contained an inmate appeal through the open slash that was made on the left side of the envelope. (*Id.* at 10.) Plaintiff forwarded the appeal to the third level of review office where Defendant Briggs is the "chief." (Am. Compl. at 3.) The third level review rejected the appeal because it appeared that Plaintiff inappropriately bypassed the lower levels of review. (Espinoza Decl. at 11.)

Based on the above allegations, Plaintiff asserts the following claims: (1) violation of First Amendment right to free speech, right to appeal without reprisal, and denial of access to courts; (2) violation of Fourteenth Amendment right to due process for failure to provide a constitutionally adequate Olsen Review; (3) violation of Fourteenth Amendment right to due process and Freedom of Information Act; and (4) negligence. (Am. Compl. at 3.)

Dkt. 8 at 2-3 (brackets added).

Magistrate Judge Lloyd reviewed the amended complaint and found that with respect to claim 1 involving First Amendment right to free speech, right to appeal without reprisal, and denial of access to courts, Plaintiff's allegations, liberally construed, stated a First Amendment retaliation claim against Defendant Lomeli for compelling Plaintiff to withdraw his CDCR Form 602 appeal or grievance ("602 appeal"). *Id.* at 3 (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). However, Magistrate Judge Lloyd determined that claim 1 failed to state sufficient facts to support a denial of access to courts claim because there is no allegation that an inadequacy in the prison's program, i.e., the administrative appeal process, hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996)). Magistrate Judge Lloyd then also dismissed all remaining claims 2 through 4 against Defendants Ortega, Truett, Rodriguez, and Briggs for failure

to state a claim.  *Id.* at 3-5.

Before the Court is a Motion for Summary Judgment filed by Defendant Lomeli, the only remaining Defendant (hereinafter "Defendant").  Dkt. 15.  Defendant argues that he is entitled to summary judgment because Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to his retaliation claim.  Dkt. 18 at 5.[2]  Plaintiff has filed an opposition to Defendant's motion and a declaration in support of his opposition.  Dkts. 23, 24.  Defendant has filed a reply to the opposition.  Dkt. 25.

For the reasons outlined below, the Court adopts in full all previously issued reports and recommendations from the magistrate judge, and GRANTS Defendant's motion for summary judgment based on failure to exhaust administrative remedies.

## II.    DISCUSSION

### A.    Adoption of Magistrate Judge's Rulings

As explained above, this action was originally assigned to Magistrate Judge Lloyd who determined that, liberally construed, the *pro se* amended complaint stated a cognizable retaliation claim against Defendant.  All other claims and Defendants were dismissed.  *See* Dkt 8.

Although Plaintiff and Defendant consented to proceed before a magistrate judge, other defendants were dismissed from the action; the unserved defendants did not consent to proceed before a magistrate judge.  As explained above, this action was reassigned to the undersigned after the Ninth Circuit issued *Williams*, which held that all named parties, including unserved defendants, must consent before a magistrate judge has jurisdiction under 28 U.S.C. § 636(c)(1) to hear and decide a case.  *See* 875 F.3d at 503.

On January 24, 2018, the Court issued an order explaining to the parties why the action had been reassigned from a magistrate judge to a district judge, describing the limits on a magistrate judge's authority when there was not full consent, and giving the parties an opportunity to object to any of the magistrate judge's rulings no later than February 26, 2018.  *See* Dkt. 28.  The February 26, 2018 deadline passed and no such objections were filed by either party.  Instead,

---

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

the Court received a notice of a change of address from Plaintiff, which indicated that he had been transferred to another prison as of January 4, 2018. *See* Dkt. 30. Thereafter, in an Order dated April 26, 2018, the Court allowed a second opportunity for the parties to file objections no later than May 15, 2018 to the aforementioned reports and recommendations from the magistrate judge because it was apparent that Plaintiff did not receive the January 24, 2018 Order,

No party objected to any of the magistrate judge's rulings, and the May 15, 2018 deadline by which to do so has passed. Accordingly, the aforementioned reports and recommendations from the magistrate judge are adopted in full, as directed below.

## B. Defendant's Motion for Summary Judgment

As mentioned above, before the Court is Defendant's Motion for Summary Judgment. Dkt. 18. Defendant argues that they are entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies as to his retaliation claim. *Id.* at 5. Plaintiff opposes Defendant's motion, and Defendant has filed a reply. Dkts. 23, 24, 25.

### 1. Background Relating to Exhaustion

Defendant has presented Plaintiff's prison records, which they argue prove that Plaintiff did not pursue a grievance relating to his retaliation claim through all three levels of the California Department of Corrections and Rehabilitation's ("CDCR's") administrative grievance process. Dkt. 21 at 5. Defendant argues as follows:

> This case must be dismissed because Plaintiff Rogelio C. Espinoza filed his complaint without first exhausting available administrative remedies, in violation of the [PLRA]. He prepared an administrative grievance that raised some of the issues in this case. But he never properly submitted it to the Appeals Office at [CTF], where he was housed. He could have submitted it using the institutional mail system, drop-boxes located in his housing facility, or using standard U.S. mail. But instead he sent it as confidential "legal mail," which the CTF Appeals Office is not authorized to receive. When the CTF Appeals Office returned the grievance to him, unprocessed, he became frustrated and inappropriately skipped the required steps of submitting his grievance to for first- or second-level review at CTF. Instead, he mailed the unprocessed grievance to the Office of Appeals in Sacramento. But because the grievance was not processed or reviewed at CTF, the Sacramento Office of Appeals also returned the grievance, unprocessed, and informed Espinoza that he was not allowed to skip over the levels of administrative review at CTF. Rather than try to fix any of the procedural missteps he had made, Espinoza filed this lawsuit, which must now be

dismissed.

> Even if Espinoza had properly submitted the grievance he prepared, however, it would not have exhausted administrative remedies as to the retaliation claim currently before the Court. His retaliation claim is based on alleged threats made by Lomeli. But Espinoza's grievance does not mention any threats or other retaliatory conduct, and thus would have failed to provide adequate notice that Espinoza was complaining that Lomeli retaliated against him.

*Id.* at 5-6.

Before turning to the facts relating to exhaustion in the present case, the Court first reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

### 2. Legal Framework Relating to Exhaustion

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to exhaust properly. *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The CDCR provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

United States District Court
Northern District of California

To initiate an appeal, the inmate or parolee must submit a 602 appeal describing the issue to be appealed to the Appeals Coordinator's office at the institution or parole region for receipt and processing.  *Id.* § 3084.2(a)-(c).  The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added).

In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on a 602 appeal form and proceed through several levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee (i.e., "Director's level").[3]  Cal. Code Regs. tit. 15, § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009).  A prisoner exhausts the appeal process when he completes the third level of review.  Cal. Code Regs. tit. 15, § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

Under the amended regulations, as of January 28, 2011, inmates have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b)(1).  The appeals coordinator can reject or "screen out" an appeal for various reasons, including failure to comply with the 30-calendar-day time limit, omission of necessary supporting documents, or duplication of a previous appeal.  *Id.* § 3084.3(c).  When the grievance is not rejected or screened out, the inmate must

---

[3] Under the regulations, as amended effective January 28, 2011, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal.  *See* Cal. Code Regs. tit. 15, § 3084.7.  As further explained below, Plaintiff's relevant grievance was allegedly submitted after January 28, 2011; therefore, the amended regulations were in effect.

pursue the grievance through each level of review to exhaust remedies. *Id.* § 3084.5. A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." *Id.* § 3084.1(b).

### 3. Methods to Submit 602 Appeals for Administrative Review

According to Appeals Coordinator Truett, there are at least three methods by which an inmate can submit a 602 appeal for institutional review at CTF. Truett Decl. ¶ 5. First, each of the housing facilities at CTF have designated drop-boxes into which inmates can deposit their completed 602 appeals. *Id.*; *see also* Voong Decl. ¶ 2. These drop-boxes are locked and have a slit into which inmates can place their 602 appeal forms. *Id.* ¶ 5. Unit secretaries or members of the CTF Appeals Office check the drop-boxes every weekday (excluding holidays) and bring any submitted 602 appeals to the CTF Appeals Office for processing. *Id.* Second, inmates may submit 602 appeals using the institutional mail service. *Id.*; *see also* Voong Decl. ¶ 2. Appeals Coordinator Truett further explains that "[o]fficers walk around the cells each day with mail bags, collecting inmate mail and delivering it to an internal distribution system." Truett Decl. ¶ 5. Inmates can use this free mail system to transmit their grievance forms to the CTF Appeals Office, but it "will take an extra day or two to process the appeal due to the delay in the institutional mail system." *Id.* Third, inmates can submit their 602 appeals to the CTF Appeals Office using the U.S. Postal Service, which is a process that takes longer than the institutional mail system and costs money because inmates have to purchase postage. *Id.*

### 4. Procedure for Withdrawing 602 Appeals and Placing Conditions on Withdrawal

Appeals Coordinator Truett explains that "[s]ometimes an inmate who has submitted an appeal will change his mind or otherwise be persuaded to withdraw an appeal." Truett Decl. ¶ 9. According to Title 15 of the California Code of Regulations § 3084.6(f), an inmate may withdraw a grievance at any time before receiving a signed response. *See* Cal. Code Regs, tit. 15 § 3084.6(f). To do so, the inmate need only complete, sign, and date Section H of the grievance form, which is entitled "Request to Withdraw Appeal." *See id.*; *see also* Truett Decl. ¶ 9; Ex. B at 2. Section H states, "I request that this appeal be withdrawn from further review because; State

reason. (If withdrawal is conditional, list conditions.)" Truett Decl. ¶ 9; Ex. B at 2. The inmate

must write in Section H the reasons for the withdrawal, and any agreed upon relief promised in

exchange for the withdrawal. *See* Cal. Code Regs, tit. 15 § 3084.6(f). If the inmate records a

promise or condition on the form, and it is not fulfilled, the inmate may submit another grievance

to obtain that relief. *See id.*; ("If there is an agreed upon relief noted in writing at the time of a

withdrawal and the relief is not provided when and as promised, then the failure to provide the

agreed upon relief may be appealed[.]"); Truett Decl. ¶ 9. Requiring that any agreed-upon relief

be in writing protects both the inmates and CDCR. *Id.* It protects the inmate by giving him

evidence of any promises and ensuring that the promises are fulfilled exactly as agreed. *Id.* It also

protects CDCR because, in the absence of such a requirement, inmates could fabricate unfulfilled

promises any time they regretted their decision to withdraw a grievance. *Id.*

### 5. Summary of Plaintiff's Relevant 602 Appeals

#### a. Plaintiff's Version

In his verified amended complaint, Plaintiff claims that he exhausted administrative

remedies as to the retaliation claim raised in his complaint by checking the box labeled "Yes"

when asked whether he "filed an appeal or a grievance concerning **ALL** of the facts contained in

this complaint." Dkt. 7 at 2 (emphasis in original). When asked whether "the process [was]

completed," Plaintiff answered by checking the box labeled "No." *Id.* When asked to "briefly

explain what happened at each level," Plaintiff responded as follows when asked, "If your answer

is yes, briefly explain what happened at each level":

> **Informal Appeal:** Various Form 22[s][4] have been submitted with
> no relief only circumvention of the issues, to wit, I have to seek
> exhaustion of my appeal to the office of Internal affairs.
>
> **First formal level:** Appeals Office refused to accept and process
> CDCR 602 (See, Addendum "A"[5])

---

[4] The Court assumes "Form 22" is the CDCR Form 22 entitled "Inmate/Parolee Request
for Interview, Item or Service."

[5] Attached to the amended complaint is "Addendum 'A'," which is a document labeled,
"Declaration of Rogelio Cuevas Espinoza." Dkt. 7 at 8-28. As shown above, Plaintiff does not
specify which page he is citing in his declaration.

> **Second formal level:** Appeals Office refused to accept and process CDCR 602[.] I never d[i]d 2nd, went straight to 3rd Level Review. (See, Addendum "A")
>
> **Third formal level:** Rejected, stating I bypassed lower levels, when in fact I never did. I did intend to submit lower levels, and they refused to accept and process my CDCR 602 Appeal.

*Id.* (footnote added). Plaintiff was also asked, "If your answer is no, explain why not." *Id.* To which, he answered as follows: "I am here for the reason of the Institution's failure to exhaust my administrative remedies." *Id.*

In his declaration, Plaintiff claims that on March 6, 2014, he submitted a 602 appeal raising the claims at issue in the instant matter, log no. CTF-S-14-00504 ("CTF-S-14-00504"). Dkt. 7 at 13. Specifically, Plaintiff claims that this 602 appeal "stated that CCI Ortega denied me a full Olsen review, denied copies of my rap sheet, and denied me access to my C-File inspection, and destruction of records." *Id.* Plaintiff claims that after a few weeks, he was interviewed by Lt. Benedetti would asked what it would "take to drop the 602 appeal?" *Id.* Plaintiff responded as follows: "to be provided with all I have requested that's in the appeal. Including the inspection of the hard copy C-File." *Id.* Plaintiff claims that Lt. Benedetti would see what she could do and "call [him] back." *Id.* However, she never called Plaintiff back. *Id.* Instead, on April 17, 2014, Defendant "intimdate[d] [Plaintiff] and force[d] [him] to withdraw the appeal." *Id.* Plaintiff states that Defendant "got what he wanted, and that was to compel [him] to sign [the withdrawal of CTF-S-14-00504] under duress on 4/17/14 . . . ." *Id.* Plaintiff further adds that when he was interviewed by Defendant, he had a "compelled oral agreement," stating as follows:

> On 4-17-14, when I was interviewed by Defendant, and compelled to sign under duress, Defendant, stated that "as soon as he finished with his personal affairs at Salinas Valley [State Prison] that he would return, and provide me with what he had agreed to. Including specific performance of the contract.

*Id.* at 14. However, Plaintiff claims that Defendant failed to "provide specific performance of the contract." *Id.* Thereafter, Plaintiff claims that on October 31, 2014, he filed an "F-22" and stated that he:

> addressed [it] to [Defendant] to reinstate and reverse the issues and claims regarding [CTF-S-14-00504] [and] requesting [Defendant] to provide specific performance of the contract to what he had agreed

to provide during the time [Plaintiff] was compelled to sign under duress on 4-17-14.

*Id.* at 15. Plaintiff claims Defendant "never responded to the F-22." *Id.* Instead, Plaintiff claims a different Correctional Counselor, "Ms. Aceves," responded by interviewing him on November 14, 2014 and stating: "I'm going to answer the F-22 because I don't know where Ms. Ortega or Mr. Lomeli's whereabouts are . . . ." *Id.* at 15-16. Plaintiff claims that Correctional Counselor Aceves "denied [his] request and answered the F-22 in her own words . . . [and] her response is insufficient to grant relief." *Id.* at 16.

Plaintiff next claims that on November 23, 2014 he "filed an administration 602 appeal for the sole purpose of reinstatement of [CTF-S-14-00504]." *Id.* Plaintiff adds as follows:

> The appeal explained the issues as to what the appeal is being sought for the Mr. Lomeli reneged and failed to provide specific performance of the contract as to what he had agreed. The reinstatement of all issues and claims pertaining to the initial appeal of Log No. CTF-S-14-00504. I also requested to be provided with specific performance of the contract, and to be allowed to redress all issues. I also stated that in any event my request is not granted to "simply bypass in order to exhaust my administrative remedies pursuant to the [P]rison Litigation Reform [A]ct in order to file for compensation in the amount of three hundred and seventy five thousand dollars, ($375,000.00) for exemplary damages (from each defendant.) This notice is [a] notice of intent to file a claim against the CDCR and all parties involved who have caused damages and/or injuries. Included were two citizen's complaint[] forms against Mr. Lomeli and Ms. Ortega.

*Id.* Plaintiff claims that he "mailed out legal mail, [and] enclosed was [the] 602 appeal form to reinstate[] and redress the issues, and/or grounds pertaining to the first initial appeal [CTF-S-14-00504]." *Id.* Thereafter, he states the "legal mail that I mailed out was illegally returned back to [him] without a[] U.S. postage, not through the proper process of returned legal mail, which first it should have been returned to sender with a paid U.S. Postage stamped and through the U.S. post office in order for CTF mail room to log the incoming mail to and from an inmate." *Id.* Plaintiff adds that the "legal mail was returned with two (2) notes on top of each other, taped to the envelope, one note stated that, on Nov. 26, 2014, Michelle Ramirez refused legal mail for the recipient, J. Truett, CCII, A.C., and signed by Mail Room Staff, Gayle." *Id.* at 17. The second note stated that "[the] appeals office does not accept legal mail, pursuant to CCR 15 § 3141 Dated 11-25-14." *Id.*

On December 29, 2014, Plaintiff "forwarded the initial appeal [CTF-S-14-00504], and the 602 appeal to reinstate all issues [November 23, 2014 602 appeal] to the third level of review in Sacramento' and send them "through the CTF mail room, as 'legal mail,' because the office here refused to accept [his] legal mail, to [CTF-S-14-00504] and the 602 appeal for reinstatement, and redress of all issues." *Id.* Plaintiff claims that he "filed an additional 602 appeal enclosed in the same envelope with the other 602's explaining to the third level of review as to why [he was] forwarding the 602 forms," "clearly stated the inappropriateness of returned legal mail, [and requested] to be allowed to reinstate and redress all issues. Including any relief of for the purpose of exhaustion of [his] administrative remedies." *Id.* at 18.

Also on December 29, 2014, Plaintiff "simultaneously filed a complaint to the following agencies either to help and or assist with the A.C.'s corruption of evading the facts to process [his] appeal, including other inmate's appeals as follows: 1) the Office of Internal Affairs, 2) Prisoner's Rights Union, 3) CDCR Office of the Ombudsman, [and] 4) Office of the Inspector General." *Id.*

Plaintiff states that on March 26, 2015, the third level of review "rejected the entire appeal." *Id.* Plaintiff claims that "it's not [his] fault that their own appeals office [is] corrupted, and always playing games with [him] and inmates who are appealing for redress," and that "[t]he appeals officers here at CTF always find[] a way to impede exhaustion of the appeals process." *Id.* However, Plaintiff does not support his conclusory allegation that his efforts to exhaust his appeals were impeded by attaching any evidence supporting such an allegation.

### b.  Defendant's Version

In contrast, Defendant has submitted evidence that between November 18, 2008 and September 22, 2017, Plaintiff submitted six 602 appeals that were accepted for review at the Director's level of appeal. Voong Decl. ¶ 8, Ex. A. The Court notes upon reviewing the log numbers of each of the six submitted 602 appeals and searching for the 602 appeal mentioned by Plaintiff above—CTF-S-14-00504 *not* listed as one of the six. *See* Voong Decl., Ex. A. Nowhere on the list does it indicate that a grievance with log no. CTF-S-14-00504 was accepted for review at the Director's level. *See id.*

According to CDCR Chief of the Office of Appeals ("OOA")[6] M. Voong, he, too, searched for CTF-S-14-00504 (which was first filed in March 2014), stating as follows:

> I am further informed that [Plaintiff] later mailed several Form 602 appeals to the [OOA], including [CTF-S-14-00504]. The [OOA] received that package on or about January 5, 2015. We assigned the package IAB Number 1408497. As shown in Exhibit A, the package with IAB Number 1408497 was screened out on March 13, 2015, because the appeal enclosed in the envelope had not been subject to institutional review at the first or second level, and the regulations did not warrant [Plaintiff's] appeal bypassing those levels of review.

Voong Decl. ¶ 10. Attached as Exhibit B to Chief Voong's declaration is a March 13, 2015 letter to Plaintiff from the OOA entitled, "RE TLR# 1408497," which states:

> Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(15). You have submitted the appeal for processing at an inappropriate level bypassing required lower level(s) of review.

*Id.*, Ex. B at 1.

The parties agree that Plaintiff's appeal, CTF-S-14-00504, is the only appeal that was submitted and given a log number and could be relevant to the discussion of whether Plaintiff exhausted his administrative remedies. There were also two other 602 appeals, but neither one was accepted for review at any level. The Court shall elaborate on these relevant 602 appeals below, and it will rely on the supporting documents submitted by Defendant.

### 1) Log No. CTF-S-14-00504

On March 6, 2014, Plaintiff submitted a 602 appeal, in which he alleging the following: "Withholding Information. Denial of full Olsen review. Refusing to provide a copy of his rap and/or to review such documents." Voong Decl., Ex. B at 19. The CTF Appeals Office processed this grievance, stamped it with log number CTF-S-14-00504, and assigned it to Defendant for the first-level review.[7] *Id.*

---

[6] The OOA was formerly named the Inmate Appeals Branch. Voong Decl. ¶ 1.

[7] The record shows that on March 19, 2014, CTF-S-14-00504 was initially "rejected" because Plaintiff attached more than one 602 appeal form. Voong Decl., Ex. B at 24. On March 25, 2014, Plaintiff responded to the rejection by indicating that there was a "misunderstanding: and that he attached the "request letter [he] provided [Correctional Counselor] Ortega." *Id.* Plaintiff's response sufficed because CTF-S-14-00504 was accepted at the first-level. *Id.* at 19.

12

According to the 602 appeal form, on April 17, 2014, Plaintiff agreed to withdraw his appeal. *Id.* at 20. Plaintiff signed Section H (the withdrawal section), which is entitled as follows, "H. Request to Withdraw Appeal: I request that this appeal be withdrawn from further review because; state reason. (If withdrawal is conditional, list conditions.)" *Id.* Below that section, it states: "All issues pertaining to this appeal have been resolve [sic] and I elect to withdraw this appeal." *Id.* There is nothing further written under that section, i.e., no conditions on his withdrawal. *Id.* Nothing on the form indicates that it was submitted to any higher levels of review.

On April 22, 2104, a copy of the "withdrawn" 602 appeal, CTF-S-14-00504, was "mailed/delivered to appellant." *Id.* at 19.

### 2) November 23, 2014 602 Appeal

On November 23, 2014, Plaintiff attempted to submit a new 602 appeal, in which he requested as follows: "Reinstatement of appeal log no. [CTF-S-14-00504]." *Id.* at 10. The new grievance states as follows:

> On 4-17-14, Lomeli M. and I [appellant] came to an oral agreement, and Mr. Lomeli M. reneged on it and failed to provide what he was suppose[d] to, as he agreed. And I should be allowed to redress, and file an appeal for reinstatement on all issues or claims for failing to provide specific performance of the contract, and/or breach of contract, 1st Amendment Free & Right to Appeal, 14th Amendment Right to Due Process. There[']s more I would like to address, but will be done further down the line, if needed that occurred in the interview between Mr. Lomeli M and I [appellant].
>
> On 4-17-14, [d]uring the interview Mr. Lomeli M requested appellant to withdraw the appeal, because that day was his last to resolve the appeal and that he needed to report back to his supervisor and that when he returned from his personal affairs in Salinas [Valley State Prison] he would provide me/appellant all I had . . . request[ed] in the initial appeal. Mr. Lomeli M never did. I spoke to Mr. Lomeli numerous times out in the co[]rridor, and he refused to comply to the agreement. Last time I spoke to Mr. Lomeli was at the C.T.F. Art show/contest to no avail [as] he continue[d] to ignore me and refuse to [do] what he agreed. I [appellant] is dissatisfied with CC-II Ms. Aceves. CC-II Ms. Aceves response is insufficient, and I'll follow through the appeal[s] process to appeal Log No. CT.F. S-14 # 00504. For exhaustion of my administrative remedies to file for redress.

*Id.* Plaintiff requested as follows:

13

> Be provided specific performance of the contract as Mr. Lomeli M. agreed, and said he would provide or grant all I have request[ed] of "Simply By Pass" in order to exhaust my administrative remedies pursuant to the PLRA to file for compensation in the amount of three hundred and seventy five thousand dollars ([$ 375,000.00]). Exemplary [or punitive] damages. This notice is [a] notice of intent to file a claim against the Department of Corrections and rehabilitation and/or the parties involved, who have cause the damages and/or injury.

*Id.* at 10, 12. Defendant points out that the November 23, 2014 602 appeal "does not say that Defendant made any threats, overt or implicit, in connection with Plaintiff's withdrawal of CTF-S-14-00504]." *Id.* at 10-13.

The record shows, and Plaintiff does not dispute, that the November 23, 2014 602 appeal was enclosed in an envelope addressed to Appeals Coordinator Truett and labeled, "LEGAL MAIL." *Id.* at 6-7; Truett Decl. ¶ 11. The CTF Appeals Office returned Plaintiff's submission two days later, on November 25, 2014, with a hand-written note stating, "Appeals Office does not accept legal mail pursuant to CCR 3141.[8]" Voong Decl., Ex. B at 6 (footnote added). According to Appeals Coordinator Truett, "[l]egal mail is a form of confidential communication and, as [he] understand[s] CDCR policy, CTF Appeals Office staff are not authorized to correspond confidentially with inmates." Truett Decl. ¶ 6 (citing Cal. Code Regs. tit. 15, §§ 3141, 3401). He adds that it is CTF's policy to "refuse legal mail sent by inmates, regardless of its contents." *Id.* Therefore, the November 23, 2014 602 appeal was not processed, assigned an institutional log number, or reviewed by CTF staff. *See* Truett Decl. ¶ 11, Ex. A. Specifically, Appeals Coordinator Truett states as follows:

> I have been informed that, in late November 2014, Espinoza tried to submit a grievance asking to have the grievance with log number CTF-S-14-00504 reinstated. I have no record of any such submission. I have reviewed Exhibit A to this declaration and note that the only grievance Espinoza submitted during 2014 (or 2015) is the one with Log Number CTF-S-14-00504. I have also been informed that he submitted the November 2014 grievance in an envelope stamped "LEGAL MAIL," and that the CTF Appeals Office returned the envelope and grievance form to him,

---

[8] Title 15 of the California Code of Regulations § 3141(c) lists the "[p]ersons and employees of persons with whom inmates may correspond confidentially and from whom inmates may receive confidential correspondence . . . ." Cal. Code Regs. tit. 15, § 3141(c). The Court notes that while the prison's appeals office is not listed under that subsection, the "Inmate Appeals . . . of the [CDCR]" is listed under section 3141(c), subsection (8). *Id.*

> unprocessed. That is consistent with CTF Appeals Office policy. CTF Appeals Office cannot communicate confidentially with inmates, so we cannot receive submissions from inmates that are marked "LEGAL MAIL." If Espinoza had resubmitted his grievance using any of the methods discussed above . . . , the CTF Appeals Office would have processed the grievance and Espinoza would have received a timely response.

*Id.* The Court notes that attached as Exhibit A to Appeals Coordinator Truett's declaration is the "Appeals Listing Report," which lists "every non-medical appeal [Plaintiff] submitted at CTF through July 18, 2017, as well as when and how each completed appeal was resolved." *Id.*, Ex. A. The Court confirms that *only* the 602 appeal submitted and processed in the first-level review in 2014 was CTF-S-14-00504. *Id.* Again, CTF-S-14-00504 is labeled on the report as a 602 appeal that has been "WITHDRAWN." *Id.*

### 3) December 29, 2014 602 Appeal

After his November 23, 2014 602 appeal was returned to him and instead of resubmitting it for first-level review using one of the other standard methods, Plaintiff gathered his grievances and mailed them to the Chief of the Office of Appeals in Sacramento. *See* Voong Decl. ¶¶ 10-11, Ex. B at 37-38. Plaintiff also included another 602 appeal dated December 29, 2014, which challenged the return of his November 23, 2014 602 appeal and argued that legal mail is a proper way to submit grievance forms for institutional review. *Id.*, Ex. B at 2-5. Plaintiff requested as follows:

> 1) [that] this appeal be process[ed] including the one enclosed in the returned envelope by C.T.F. appeals coordinators office, and by-pass[ed] so that a determination be made by the Director's third level review, and [to] exhaust available administrative remedies[;] 2) [that], in the alternative the Director receive Legal Mail from inmates pursuant to CCR Sec. 3141[c](8), especially [Plaintiff] and process appeals "sen[t]" by inmates with the date within the 30 days period be the date "SENT" mailed and delivered to the [correctional officer] for signature and the date on the envelope, and the date of the logging of the legal mail by staff in the mail room be the date to make the appeal timely; [and] 3) [that] [t]he Appeals Coordinators, here, at CTF cease and desist their (misunderstanding) that they don't receive Legal Mail when the CCR 15, section 3141[c](8) and the DOM states otherwise.

*Id.* at 2, 4.

Again, Plaintiff entitled the entire mailing as "CONFIDENTIAL LEGAL MAIL," stamped" LEGAL MAIL" on the back of the envelope, and addressed it to the OOA Chief. *Id.* at

37-38.

On March 13, 2015, the OOA Acting Chief R. Briggs sent Plaintiff a letter indicating that his appeal was "rejected" because Plaintiff he had "bypass[ed] required lower level(s) of review." Voong Decl. ¶ 11, Ex. B at 1. According to OOA Chief Voong, the new 602 appeal was rejected as premature to submit it for third-level review because it had never been reviewed at the first- or second-levels. *Id.* at ¶ 10.

In March 2015, as explained above, Plaintiff received a letter from the OOA [dated March 25, 2015] informing him that his December 29, 2014 602 appeal had been rejected and giving the aforementioned explanation. *Id.*, Ex. B at 1.

### 6. The Instant Lawsuit

Plaintiff filed the instant action on October 26, 2016, but there is nothing in the record indicating that he successfully submitting CTF-S-14-00504 or the two new 602 appeals to the CTF Appeals Office for institutional review. Plaintiff's complaint, amended on February 9, 2017, alleges that Plaintiff withdrew CTF-S-14-00504 because Defendant threatened him. *See* Dkt. 7 at 13-15. Plaintiff claims that Defendant allegedly threatened that, if Plaintiff did not withdraw the CTF-S-14-00504, Defendant would have him transferred to San Quentin State Prison or placed in administrative segregation. *See id.* at 14. Defendant allegedly also promised to give Plaintiff everything he was asking for if he withdrew the CTF-S-14-00504. *See id.* at 15. The Court notes that Plaintiff did not write any of these conditions in Section H of CTF-S-14-00504. *See* Truett Decl. ¶ 10; Ex. B at 2.

### 7. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in

16

the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  In support of the motion for summary judgment, Defendant has presented declarations from Chief Voong and Appeals Coordinator Truett.  Dkt. 18-2; Dkt. 18-3.  Meanwhile, Plaintiff has filed his verified amended complaint, declarations, and opposition.  Dkts. 7, 23, 24.  The Court construes the aforementioned filings to be affidavits under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### 8.      Analysis Relating to Exhaustion of Administrative Remedies

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The ultimate burden of proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

Defendant argues that Plaintiff did not exhaust his administrative remedies as to his retaliation claim, the sole remaining claim in this action.  Dkt. 18 at 13-16.  Therefore, Defendant argues that he is entitled to summary judgment on this ground.  *Id.* at 16-17.

In support of their argument, Defendant submits a declaration by Chief Voong, which indicates that the OOA screens all incoming inmate appeals before the appeals receive a Director's

level decision. Voong Decl. ¶ 5. Specifically, the OOA keeps an electronic record of each inmate administrative appeal that has proceeded through the Director's level of review, including a record of each administrative appeal that was received by the OOA but was rejected or screened out. *Id.* at ¶ 7. Appeals that are screened out can be categorized either as a rejection or a cancellation. *Id.* ¶ 5. A rejected appeal is one that has been returned to the inmate with instructions to correct a deficiency prior to further consideration. *Id.* Because the inmate has the ability to resubmit the appeal, the rejection "screen out" letter is not appealable. *Id.* A cancelled appeal, by contrast, informs the inmate that his appeal has been cancelled and may not be resubmitted; a separate appeal, however, can be filed on the cancellation decision. *Id.* at ¶¶ 5-6.

As mentioned above, attached to Chief Voong's declaration is a copy of the OOA computer printout report showing each appeal that was submitted through September 22, 2017 by Plaintiff to the Director's level of review, and whether the appeal was received, accepted, or screened out at the Director's level. Voong Decl. ¶ 8; Ex. A. As determined above, there exists one 602 appeal with a log number (CTF-S-14-00504), and another 602 appeal seeking to reinstate CTF-S-14-00504 with a "package IAB Number" (1408497), which are related to the retaliation claim that is the subject of the instant action. *Id.* For the purpose of this discussion, the Court takes the facts in the light most favorable to Plaintiff and construes both CTF-S-14-00504 and 1408497 to include the retaliation claim against Defendant. CTF-S-14-00504 (which Plaintiff had withdrawn) is not listed on the report, and according to Chief Voong it was "never accepted" for third-level review. *Id.* at ¶ 9, Ex. A at 1-2. Meanwhile, the report does not list 1408497 under the heading "Accepted Appeal" to the Director's level of review. *Id.* at ¶ 10, Ex. A at 1. Instead, the report lists 1408497 under the heading "Screen Outs" and shows that such appeal was screened out on March 13, 2015. *Id.* Defendant argues that Plaintiff "never properly submitted his new grievance, so it was not reviewed at the first, second, or third level, and [Plaintiff] therefore failed to exhaust administrative remedies." Dkt. 18 at 14.

Defendant has met his ultimate burden as the moving party by setting forth evidence to demonstrate Plaintiff's non-exhaustion as to his retaliation claim. The undisputed evidence shows that CTF-S-14-00504 was never accepted at the Director's level of review because it was

18

withdrawn, and that 1408497 was screened out on March 13, 2015 because Plaintiff had failed to present it for institutional review at the first or second level and "the regulations did not warrant [Plaintiff's] appeal bypassing those levels of review." Voong Decl. at ¶ 12. And, as explained above, the record shows Plaintiff did not re-submit 1408497. Thus, Plaintiff's filing of 1408497 at the Director's level of review did not properly exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90 (proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules"). If Plaintiff had wanted to continue to pursue 1408497, he was advised that he could first resubmit the appeal for review at the first and second levels of review, *see* Voong Decl. ¶¶ 10-11, but he did not do so. Because the "rejection" of an appeal "does not exhaust administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the evidence submitted by Defendant satisfies the initial burden of proving that there were available administrative remedies for Plaintiff, and that Plaintiff failed to exhaust those remedies properly, *see Albino*, 747 F.3d at 1172.

Defendant has adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust. As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. Improper screening of a prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). The prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

Here, Plaintiff could meet the first *Sapp* factor, as shown by his attempts to file CTF-S-14-00504 and 1408497, which, as construed in the light most favorable to the Plaintiff above, would have sufficed to exhaust his retaliation claim. *See id.* However, as explained above, CTF-S-14-00504 was never accepted at the third-level of review because it was withdrawn by Plaintiff, and 1408497 was rejected. Therefore, in order to satisfy the second *Sapp* factor Plaintiff must show

that prison officials rejected 1408497 for reasons inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. The Court finds he has failed to present evidence showing 1408497 was improperly screened out/rejected at the third level of review. Moreover, while Plaintiff makes a conclusory claim in his opposition that he "diligently pursued all administrative legal avenues available to him, [but] C.T.F. Office of Appeals, [Appeals Coordinator] Truett, 'TLR,' Chief [of] Office of Appeals are not being candid," he does not support such a claim with evidence. Dkt. 24 at 1. For example, he does not show any evidence that he resubmitted 1408497 (his 602 appeal seeking to reinstate CTF-S-14-00504) to the lower levels of review.

Plaintiff also claims that CTF prison officials "refused to accept and process" at the lower levels his 602 appeal seeking to reinstate CTF-S-14-00504. Dkt. 7 at 2. However, as explained in detail above, Plaintiff had submitted it as "legal mail," which the CTF Appeals Office could not accept. In any event, there were several ways Plaintiff could have submitted his 602 appeal seeking to reinstate CTF-S-14-00504 for institutional review at the lower levels. He could have submitted it using the institutional mail system, the drop-boxes located within the housing facilities, or through U.S. mail. *See* Truett Decl. ¶ 5; *see also* Voong Decl. ¶ 2. But he did not use any of these methods. Instead, he used "legal mail," and the CTF Appeals Office returned Plaintiff's grievance without processing it. This was proper because, as noted above, "legal mail" is a form of confidential correspondence, and inmates may only engage in confidential correspondence with specific people. Truett Decl. ¶ 6; *see also* Cal. Code Regs. tit. 15, § 3141(c). While the Chief of Inmate Appeals is on the list, *id.* § 3141(c)(8), the CTF Appeals Office is not, *see id.*; *see also* Truett Decl. ¶ 6. General CDCR employees, such as certain prison officials like the prison staff in the CTF Appeals Office, are not authorized to receive correspondence from inmates that is designated as confidential legal mail. Truett Decl. ¶ 6; *see also* Cal. Code Regs. tit. 15, § 3401(a) & (e). If the CTF Appeals Office staff receives a package marked "legal mail," they will generally return it without regard to its contents, which is what happened in the instant case. *See* Truett Decl. ¶ 6. Plaintiff then failed to correct his error. Rather than submitting his 602 appeal seeking to reinstate CTF-S-14-00504 using one of the appropriate methods, Plaintiff mailed it for third-level review in Sacramento, skipping the two lower levels of review. *See* Voong Decl.

¶¶ 10–11, Ex. B at 37-38; Dkt. 7 at 17-17. The OOA rejected the submission because the grievances were never reviewed at the first or second level. *See* Voong Decl. ¶ 10, Ex. B at 1. Pursuing a grievance through the lower levels of review is also proper under the administrative exhaustion process of Title 15. *See id.* at ¶¶ 3-5; *see also* Cal. Code Regs, tit. 15, § 3084.6(b)(15).

As the Ninth Circuit explained in *Sapp*, a proper screening decision does "not foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable." *Sapp*, 623 F.3d at 826. Such an excuse is not available to Plaintiff here, however, as the record shows that 1408497 was screened out only once at the third level of review. Consequently, as Plaintiff has not presented evidence that he resubmitted 1408497 to the lower levels of review in response to the third level screening decision, the Court concludes Plaintiff could not have had a reasonable good faith belief that further administrative remedies were effectively unavailable.

Lastly, as in *Sapp*, nothing in the record suggests that the CDCR has "created draconian procedural requirements that would 'trip[ ] up all but the most skillful prisoners'" and render administrative remedies effectively unavailable, so as to excuse a failure to exhaust. *See Sapp*, 623 F.3d at 827 (citing *Woodford v. Ngo*, 548 U.S. 81, 102 (2006)). Significantly, Defendant has submitted evidence demonstrating Plaintiff has prosecuted appeals through the Director's level of review, both before and after pursuing the appeal at issue herein. *See* Voong Decl., Ex. A.

In sum, the Court concludes that although 1408497 was screened out at the third level of review, administrative remedies remained available to Plaintiff because (1) the third level screening process (i.e., allowing Plaintiff to resubmit to the lower levels of review his 602 appeal seeking to reinstate CTF-S-14-00504) would not lead Plaintiff to hold a reasonable, good-faith belief that further administrative remedies were effectively unavailable, and (2) the CDCR grievance procedure was not so complex as to render further administrative remedies effectively unavailable. *See Sapp*, 623 F.3d at 827. Therefore, the Court finds Plaintiff's failure to exhaust administrative remedies properly is not excused because of improper screening.

Defendant has adequately shown that there were available administrative remedies that

Plaintiff did not fully exhaust as to his retaliation claim. Accordingly, Defendant is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies, and the motion is GRANTED.[9]

## III.    CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.    The findings and recommendations in the January 24, 2017 Order Granting Motion for Leave to Proceed *In Forma Pauperis* (dkt. 5); the January 24, 2017 Order of Dismissal With Leave to Amend; the May 16, 2017 Order of Partial Dismissal and Service (dkt. 8); the September 1, 2017 Order Denying Motion to Compel and Motion Requesting Emergency Injunction (dkt. 15); the September 22, 2017 Order granting Defendant's motion to change time to file dispositive motion (dkt. 17); and the October 25, 2017 Order granting Plaintiff's motion for an extension of time to file his opposition (dkt. 22) are adopted in full.

2.    Defendant's motion for summary judgment is GRANTED based on Plaintiff's failure to exhaust administrative remedies. Dkt. 18. Plaintiff's complaint is DISMISSED without prejudice to refiling his claim for monetary damages relating to his retaliation claim after exhausting California's prison administrative process. *See McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (proper course in claims dismissed due to failure to exhaust administrative remedies is dismissal without prejudice to refiling).

3.    The Clerk shall terminate all pending motions and close the file.

4.    This Order terminates Docket No. 18.

IT IS SO ORDERED.

Dated:  June 4, 2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[9] The Court's ruling that Defendant's motion for summary judgment is granted based on Plaintiff's failure to exhaust administrative remedies (because he never properly submitted his 602 appeal seeking to reinstate CTF-S-14-00504) obviates the need to address Defendant's alternative arguments in the motion that his 602 appeal seeking to reinstate CTF-S-14-00504 would not have put prison officials on notice that Plaintiff complained of retaliation.